UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| WINMARK CORPORATION, | Case No. 08-CV-6192 (PJS/AJB) |
| Plaintiff, | |
| v. | ORDER |
| BARBARA HILL and WILLIAM H. HARROLD, | |
| Defendants. | |

---

Ansis V. Viksnins and Amy R. Mason, LINDQUIST & VENNUM, for plaintiff Winmark Corporation.

Scott S. Payzant, LEONARD, O'BRIEN, SPENCER, GALE & SAYRE, for defendants Barbara Hill and William H. Harrold.

Defendants Barbara Hill and William H. Harrold move under Fed. R. Civ. P. 12(b)(2) to dismiss for lack of personal jurisdiction and under Fed. R. Civ. P. 12(b)(6) to dismiss for failure to state a claim. In the alternative, defendants move under 28 U.S.C. § 1404(a) to transfer this case to the United States District Court for the Northern District of Florida. Plaintiff Winmark Corporation resists defendants' motions and moves for a preliminary injunction.

The Court finds that it has personal jurisdiction over Hill and that it does not have personal jurisdiction over Harrold. But because the Court also finds that this matter should be transferred to Florida — a state that indisputably has personal jurisdiction over both Hill and Harrold — the Court denies defendants' Rule 12(b)(2) motions without prejudice. This Court also denies without prejudice defendants' Rule 12(b)(6) motion, as well as plaintiff's motion for

-1-

a preliminary injunction, so that the transferee court can address the merits of this case in the first instance.

## I.  BACKGROUND

Winmark is a Minnesota company that franchises, among other things, retail stores that sell used children's clothing, toys, and furniture under the name "Once Upon a Child."  Hill contacted Winmark in 1998 to inquire about opening a Once Upon a Child store in Florida, where she lives.  Hill attended a "Discovery Day" in Minnesota to learn more about the business.  Hill Aff. ¶ 4 [Docket No. 14]; Suppl. Baustian Aff. ¶ 2 [Docket No. 26].

After some negotiations, Hill and Winmark entered into a franchise agreement in October 1998, and Hill began operating a Once Upon a Child store in Tallahassee, Florida.  Hill later came to Minnesota on two separate occasions for additional training from Winmark related to the store.  Hill Aff. ¶ 6; Suppl. Baustian Aff. ¶ 4.

Hill operated the store for the next ten years.  During that time, she and her staff had numerous communications with Winmark's representatives in Minnesota.  Hill Aff. ¶ 9; Suppl. Baustian Aff. ¶ 8.  She also sent royalty and other payments to Winmark in Minnesota.  Hill Aff. ¶ 9; Suppl. Baustian Aff. ¶ 10.  And in 2003 and 2004, Hill came to Minnesota at least three times to participate on Winmark's "Franchise Advisory Council."  *Id.* ¶ 7; Suppl. Baustian Aff. ¶ 11.  Further, as a member of Winmark's "Product Advisory Committee" from 2002 to 2006, Hill regularly participated in conference calls with Winmark's Minnesota staff.  *Id.* ¶ 8; Suppl. Baustian Aff. ¶ 12.

Hill's husband, Harrold, was an officer of the entity through which Hill operated her Once Upon a Child store.  Mason Aff. Ex. D [Docket No. 21].  Harrold did not, however, sign

the franchise agreement, and there is no evidence that he had any role in managing the store's day-to-day operations. Harrold attended, as Hill's guest, two annual conferences for franchisees held by Winmark outside of Minnesota, one in 2003 and one in 2007. Suppl. Baustian Aff. ¶ 14; Hill Aff. (second) ¶ 7 [Docket No. 30]. But there is no evidence that Harrold had any contact with Minnesota in connection with Hill's franchise.

Shortly before Hill's franchise agreement was due to expire in 2008, Hill informed Winmark that she did not plan to renew the agreement. Hill and Winmark exchanged letters about what effect a non-compete clause in the franchise agreement would have after the franchise agreement expired. Winmark refused to suspend or modify the non-compete clause, and the franchise agreement expired in October 2008.

Hill then sold her store to Harrold, and Harrold took over management of the store, which was renamed "Kid's Pointe." Harrold Aff. ¶ 4 [Docket No. 15]. Thus, since the expiration of Hill's franchise agreement, her former "Once Upon a Child" store has changed in two respects: The store has a new name (Kid's Pointe) and a new owner and manager (Harrold). Hill apparently has no direct involvement in Kid's Pointe. She does, however, own the building in which the store is located. She also owns and runs a consignment store for adults called "Fashion Pointe." Fashion Pointe is located next door to Kid's Pointe.

## II. ANALYSIS

### A. *Personal Jurisdiction*

When personal jurisdiction is contested, the plaintiff must ultimately prove, by a preponderance of the evidence, facts establishing that the district court has personal jurisdiction over the defendant. *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th

Cir. 1991). But the plaintiff need not do so "until trial or until the court holds an evidentiary hearing." *Id.* When a district court considers only affidavits or other written evidence in connection with a Rule 12(b)(2) motion, the plaintiff need only make a "prima facie showing" of jurisdiction. *Block Indus. v. DHJ Indus., Inc.*, 495 F.2d 256, 259 (8th Cir. 1974); *see also Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004) (citing *Block Industries*).

The plaintiff attempting to make this prima facie showing — like the defendant seeking dismissal — cannot rely on pleadings alone. Instead, the parties must present affidavits or other evidence outside of the pleadings. *Block Indus.*, 495 F.2d at 260 ("The 'prima facie showing' must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto."). In weighing that evidence, "the court must look at the facts in the light most favorable to the nonmoving party, and resolve all factual conflicts in favor of that party." *Dakota Indus.*, 946 F.2d at 1387 (citation omitted). As long as there is "some evidence upon which a prima facie showing of jurisdiction may be found to exist," the Rule 12(b)(2) motion will be denied. *Aaron Ferer & Sons Co. v. Diversified Metals Corp.*, 564 F.2d 1211, 1215 (8th Cir. 1977); *see also Watlow Elec. Mfg. Co. v. Patch Rubber Co.*, 838 F.2d 999, 1000 (8th Cir. 1988) (citing *Aaron Ferer & Sons*).

Hill and Harrold argue that this Court lacks personal jurisdiction over them. Under Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure, "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). Thus, whether this Court has jurisdiction over Hill and Harrold depends on

whether a Minnesota state court could exercise jurisdiction over them.  *See Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996).

Minnesota's long-arm statute is as broad as a long-arm statute can be:  It authorizes Minnesota state courts to exercise all of the jurisdiction permitted under the United States Constitution.  As a result, this Court has personal jurisdiction over Hill and Harrold if the exercise of such jurisdiction by a Minnesota state court would be constitutional.  *See Johnson v. Woodcock*, 444 F.3d 953, 955 (8th Cir. 2006) ("Because Minnesota's long-arm statute is coextensive with constitutional limits, we need only determine whether the assertion of jurisdiction over this defendant offends due process.").

The Due Process Clause permits state courts to exercise personal jurisdiction over a nonresident only if that nonresident has sufficient contacts with the forum state that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotations omitted).  Only when a defendant "purposefully avails itself of the privilege of conducting activities within the forum State" does the Constitution permit the forum state to exercise personal jurisdiction over that defendant.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quotations omitted); *Johnson*, 444 F.3d at 955 ("Personal jurisdiction exists only if the contacts between the defendant and the forum state are sufficient to establish that the defendant has purposefully availed himself of the benefits and protections of the forum state.").

Hill contends that she lacks sufficient contacts with Minnesota to support the Court's exercise of personal jurisdiction.  Hill is mistaken.  By entering into a franchise agreement with Winmark, by visiting Minnesota regularly in connection with the franchise, and by regularly

communicating with Winmark in Minnesota, Hill purposefully availed herself of the benefits of doing business in Minnesota.  Further, there is nothing unfair about requiring Hill to litigate her dispute with Winmark in Minnesota.  Winmark has a strong interest in litigating in Minnesota, the state has an interest in providing a forum to Winmark, and Hill cannot make a compelling showing that the burden on her of litigating in Minnesota substantially outweighs these interests.

Harrold, however, is in a different position.  Harrold never entered into an agreement with Winmark, and there is no evidence that he has had contacts of any kind with Minnesota.  Implicitly recognizing that Harrold's contacts with Minnesota are too slim to support personal jurisdiction in an ordinary case, Winmark contends that the Court nevertheless can exercise personal jurisdiction over Harrold because he committed an intentional tort that had effects in Minnesota.  Winmark Mem. Opp. Mot. Dism. at 13-15 [Docket No. 25].  The Court disagrees.

Under *Calder v. Jones*, when an out-of-state party commits an intentional tort that has an effect in the forum state, the forum state can constitutionally exercise jurisdiction over the tortfeasor.  465 U.S. 783, 788-90 (1984); *see also Superior Edge, Inc. v. Maricopa County Cmty. Coll. Dist.*, 509 F. Supp. 2d 786, 794 (D. Minn. 2007) (explaining *Calder* and its application by the Eighth Circuit).  Winmark contends that Harrold tortiously interfered with the contractual relationship between Winmark and Hill, and that this intentional tort harmed Winmark, a corporation located in Minnesota.  First Am. Compl. Claim II [Docket No. 7]; Winmark Mem. Opp. Mot. Dism. at 14-15.

But Winmark's complaint, taken on its own terms, fails to state a claim against Harrold for tortious interference with contract.  Under Florida law — which the parties agree governs this action — a tortious-interference claim has four elements:  (1) the existence of a business

relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damages to the plaintiff as a result of the breach of the relationship. *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985); *Chicago Title Ins. Co. v. Alday-Donalson Title Co. of Fla., Inc.*, 832 So. 2d 810, 814 (Fla. Ct. App. 2002). The complaint sufficiently alleges three of these four elements — the existence of a business relationship, Harrold's knowledge of that relationship, and damages. But it does not sufficiently allege that Harrold intentionally and unjustifiedly interfered with the contractual relationship between Winmark and Hill.

Winmark contends that "Harrold's actions were not justified and were done to assist Hill in breaching the Franchise Agreement." First Am. Compl. ¶ 41; *id.* at 7 ("Harrold Assists Hill in Violating the Franchise Agreement"). But *assisting* someone to breach a contract is not the same as *inducing* that person to breach a contract. A defendant tortiously interferes with a contract "by *influencing, inducing or coercing* one of the parties to the relationship to abandon the relationship or breach the contract . . . ." *West v. Troelstrup*, 367 So. 2d 253, 255 (Fla. Dist. Ct. App. 1979) (emphasis added). Conversely, a defendant does *not* tortiously interfere with a contract if he merely assists someone who decided on her own to breach the contract. Thus, in *Chicago Title,* the court dismissed for failure to state a claim a tortious-interference claim where "the only evidence was that the [party that breached the contract] *already intended to breach* the contracts before contacting" the defendant who was accused of tortious interference. 832 So. 2d at 814 (emphasis added).

Winmark's allegations about Harrold's actions, even if true, show only that he assisted Hill in breaching her contract, not that he influenced, induced, or coerced her to do so. Because

-7-

Winmark's complaint fails to state a claim for tortious interference against Harrold, the Court does not have personal jurisdiction over Harrold based on that claim. And because there is no other basis for the Court to exercise personal jurisdiction over Harrold, the Court agrees with Harrold that it lacks personal jurisdiction over him. Nevertheless, the Court does not dismiss Winmark's claims against Harrold, but instead transfers the case to the United States District Court for the Northern District of Florida, a court that can exercise personal jurisdiction over both Hill and Harrold.

### *B. Transfer*

Under 28 U.S.C. § 1404(a), a court may transfer a case "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). This case involves a dispute under Florida law about the operation of a store in Florida by Florida residents. Most of the testimony about the Florida store's operations is likely to come from witnesses in Florida. Further, if the Court retained this case, it would have to dismiss Harrold, and Winmark would have to bring a second suit in Florida if it wanted to pursue its claims against him. It appears that such a second suit is a near certainty, as Winmark seeks an injunction to close the store, and that store is owned and operated by Harrold, not Hill.

Although Winmark's choice of forum is entitled to deference, and although Winmark need not proceed against all possible defendants if it does not want to, the Court has an independent obligation to ensure that cases are litigated efficiently and thus to preserve scarce

judicial resources. Under the circumstances, the Court finds that transferring this case to federal court in Florida is in the interest of justice.[1]

## C. Other Motions

The parties have also brought motions regarding the merits of Winmark's claims. Defendants move to dismiss for failure to state a claim under Rule 12(b)(6), while Winmark moves for a preliminary injunction, contending that it is likely to prevail on the merits.

The Court is skeptical of defendants' arguments, which are based on the dubious premise that the non-compete clause that Hill is accused of violating is invalid. And the Court is sympathetic to Winmark's arguments in favor of a preliminary injunction. But given that the

---

[1] The Court further notes that venue does not appear to proper in Minnesota. Under 28 U.S.C. § 1391(a), venue lies in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). Because neither defendant resides in Minnesota, and because there is a district other than the District of Minnesota — namely, the Northern District of Florida — in which this action could be brought, venue is proper in this district only if "a substantial part of the events or omissions giving rise" to Winmark's claim occurred here. It does not appear to the Court that this condition is met. The "event" giving rise to this lawsuit is the continued operation of Hill's store in purported breach of the non-compete clause — an event that occurred in Florida, not Minnesota.

Defendants have not, however, contended that venue is improper in Minnesota. Instead of bringing a motion under Rule 12(b)(3) of the Federal Rules of Civil Procedure and seeking a transfer under 28 U.S.C. § 1406, defendants moved to dismiss under Rules 12(b)(1) and 12(b)(6) or for a transfer under § 1404(a). Defs. Mot. Dism. or Transfer [Docket No. 11]. By failing to assert the defense of improper venue, defendants waived it. *See* Fed. R. Civ. P. 12(h)(1).

Court is transferring this case to the Northern District of Florida, the Court believes that the merits of this case are better addressed in the first instance in that forum.

ORDER

Based on the foregoing and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendants' motion to dismiss or transfer [Docket No. 11] is GRANTED IN PART and DENIED IN PART as follows:

    a. To the extent that defendants seek a transfer order, defendants' motion is GRANTED.

    b. Defendants' motion is DENIED WITHOUT PREJUDICE in all other respects.

2. The motion of plaintiff Winmark Corporation for a preliminary injunction [Docket No. 18] is DENIED WITHOUT PREJUDICE.

3. This case is hereby TRANSFERRED to the United States District Court for the Northern District of Florida (Tallahassee Division).  The Clerk of Court is directed to effect the transfer.

Dated:  April 7, 2009

       s/Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge